# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| John Keith Wright, ) | Civil Action No.: 3:21-cv-01611-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| John Hancock Life Insurance Company ) | |
| (U.S.A.), John Hancock Mutual Life Insurance ) | |
| Company, John Hancock Financial Network, ) | |
| Inc., and Andrew R. Humer, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff John Keith Wright filed this action against John Hancock Life Insurance Company (U.S.A.), John Hancock Mutual Life Insurance Company, John Hancock Financial Network, Inc. (collectively "Hancock Defendants") and Andrew R. Humer ("Humer"). (ECF No. 1-1.) Plaintiff alleges he was "induce[d]" by Humer and Hancock Defendants' "misrepresentations, failures, and omissions" into purchasing an "[un]sound and [in]appropriate insurance and financial planning tool" and that he has suffered financial losses as a result of these alleged acts. (*Id.* at 9, 10 ¶¶ 37, 40, 43.) Specifically, Plaintiff alleges causes of action for negligence, breach of fiduciary duty, negligent misrepresentation, and unfair trade practices against Humer, as well as aiding and abetting the breach of fiduciary duty and negligence against Hancock Defendants. (*Id.* at 13-26 ¶¶ 68-124.)

This matter is before the court on Humer's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9.) For the reasons set forth below, the court **DENIES** this motion.

1

## I.     RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff initially filed this action on April 22, 2021, in the Court of Common Pleas for South Carolina's Eleventh Judicial Circuit. (ECF No. 1-1.) He alleges he purchased various life insurance policies from Hancock Defendants through an agent in Charleston, South Carolina between 1989 and 1993. (*Id.* at 5 ¶¶ 10-13.) He contends that servicing rights for these policies were eventually transferred to The Carolinas General Agency in Charlotte, North Carolina. (*Id.* at 5 ¶ 14.) In September 2004, Humer, an agent of The Carolinas General Agency and of Hancock Defendants, is alleged to have contacted Plaintiff with the suggestion that Plaintiff replace his existing life insurance policies with the John Hancock Medallion Variable Universal Life Insurance Edge II ("MVL Edge II") policy. (*Id.* at 6 ¶¶ 15-19.) According to Plaintiff, MVL Edge II is an indexed universal life insurance policy ("IUL") and that, under such a policy, "all premium payments above the cost of insurance are directed into an internal investment account by the insurance company." (*Id.* at 6-7 ¶¶ 20-21.)

Plaintiff purports Humer advised him to surrender his existing life insurance policies and use the funds to make initial premium payments on an MVL Edge II policy. (*Id.* at 7 ¶ 22.) Plaintiff maintains that he was advised by Humer and Hancock Defendants that the value of his IUL would grow by 10% each year and that he could stop making premium payments on the account after three years. (*Id.* at 7-8 ¶¶ 23, 31.) Further, Humer is said to have advised Plaintiff that once the IUL was "fully funded," Plaintiff could borrow against the cash value of the policy during retirement to supplement his income and that he would not need to repay these loans during his lifetime because "the insurance company would use the death benefit to pay off any accrued interest." (*Id.* at 7 ¶¶ 24-25.) In general, Plaintiff alleges Humer "promoted that IUL policy [as] a safe and risk-free approach to achieving [Plaintiff's] insurance and financial goals." (*Id.* at 9 ¶

2

35.) According to Plaintiff, he surrendered his previous policies in favor of an MVL Edge II policy based on this advice and he suffered an immediate loss of $7,000.00. (*Id.* at 8 ¶¶ 28-30.)

Plaintiff claims that in 2009, he made several additional policy changes at the advice of Humer, including lowering the death benefit coverage by $100,000.00, increasing his planned premium from $1,600.00 to $2,760.00 per year, setting up an auto-draft for premium payments, and making monthly premium payments of $230.00. (*Id.* at 14 ¶¶ 60-61.) Plaintiff alleges that, although he has paid these premiums every month since April 2009, he received a Notice of Default on June 15, 2020, demanding a payment of $2,058.56. (*Id.* at 14 ¶ 63.) He claims that this was the first notice he had of potential losses caused by his MVL Edge II policy. (*Id.*)

Plaintiff maintains that his participation in the IUL strategy and purchase of an MVL Edge II policy caused him to suffer losses, in part, because Humer did not inform him that the "costs, charges, expenses, and other deductions [associated with MVL Edge II] could exceed the indexed interest earned and cause the accumulated cash value of the IUL policy to decline." (*Id.* at 9 ¶¶ 34, 37.) Plaintiff also specifically claims that the 10% growth rate projected by Humer and Hancock Defendants was "unrealistically high and unattainable" and that Humer's suggestion that Plaintiff could supplement his income was a "negligent misrepresentation." (*Id.* at 10, 11 ¶¶ 42, 50.) In essence, Plaintiff alleges that he was not adequately made aware of the risks of the MVL Edge II policy, that the MVL Edge II policy is a "flawed insurance and financial planning strategy," and that he would not have participated in it were it not for Humer and Hancock Defendants' "misrepresentations, failures, and omissions." (*Id.* at 10 ¶¶ 35-41.)

On May 28, 2021, the action was removed to this court, (ECF No. 1), and on June 28, 2021, Humer filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 9). Plaintiff then filed a response in opposition to Humer's motion on July 12, 2021

(ECF No. 10), and Humer filed a reply to Plaintiff's response on July 23, 2021 (ECF No. 23).

## II.     JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  For jurisdictional purposes, Plaintiff alleges that he is a citizen and resident of South Carolina, that Hancock Defendants are corporations domiciled in the state of Massachusetts, and that Humer is a citizen and resident of North Carolina.  (ECF No. 1-1 at 3-4 ¶¶ 1-3.)  The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  (ECF No. 1.)

## III.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  "In considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)."  *Jenkins v. Fed. Bureau of Prisons*, C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011).  Rule 8(a) provides that to be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th

Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### IV.    ANALYSIS

A.    The Parties' Arguments

Humer argues that each of the claims brought against him by Plaintiff are time barred by their respective three-year statutes of limitations. (ECF No. 9-1 at 4 (citing S.C. Code Ann. §§ 15-3-530(5) (2001), 39-5-150 (1976)).) He further asserts that "[u]nder the discovery rule, the three-year clock starts ticking on the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from wrongful conduct," and he offers two alternative theories supporting his conclusion that the claims are time barred. (*Id.* at 4 (quoting *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms.*, 414 S.C. 33, 76 (2015)).)

First, Humer argues that when Plaintiff reduced his life insurance coverage and increased his monthly premium payments in 2009, he must have done so because he "knew, or at the very least should have known, that the MVL Edge II policy was not attaining 10% returns and that costs and charges were draining the value of the account." (*Id.* at 5.) Accordingly, Humer reasons that this is evidence of Plaintiff becoming aware of the alleged injury and that the claims expired three years after that, in 2012. (*Id.*) Second, Humer contends that a reasonably diligent person in

5

Plaintiff's position would have kept track of their investment account balance and, thereby, would have noticed the loss in value long before Plaintiff claims to have done so. (*Id.* at 6.) Humer acknowledges that to accept this argument, the court must first "take judicial notice of the fact that [Plaintiff] would have had access to information relating to his MVL Edge II policy and the relating investment account," such as through account statements. (*Id.*)

Plaintiff responds with three arguments. First, Plaintiff generally argues that a 12(b)(6) motion is not the proper vehicle for raising an affirmative defense, such as statute of limitations. (ECF No. 10 at 2-3.) Second, he argues that judicial notice is improper under these circumstances. (*Id.* at 3-4 (citing Fed. R. Evid. 201(c)).) Third, Plaintiff points to the paragraph of his Complaint that indicates he did not become aware of the MVL Edge II policy's poor financial performance until he received the June 2020 Notice of Default. (*Id.* at 4-6.) According to him, this was the first time that he became aware of his alleged injury and the initiation of the statute of limitations. (*Id.*) He further argues that he could not have brought these claims before receiving the Notice of Default because, before then, he could not have proved pecuniary loss, an element to each of his claims. (*Id.* at 5.)

B.     The Court's View

As an initial matter, the court agrees with Plaintiff that Humer's 12(b)(6) Motion should be granted only "if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*'" and that this happens in "relatively rare circumstances." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (alteration in original) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). As such, "the question presented in this case is whether the . . . [C]omplaint sets forth *on its face* the facts necessary to conclude that [Plaintiff]'s claims are barred by the statute of limitations." *Id.*

6

The court will now consider Humer's argument that the 2009 policy changes indicate Plaintiff knew or should have known of his financial losses at that time. Plaintiff's Complaint directly states that he did not have knowledge of the policy's alleged deficiencies until receiving the Notice of Default in 2020. (ECF No. 1-1 at 14 ¶ 63.) The court would have to ignore this allegation if it were to accept Humer's contention that Plaintiff knew of his financial losses in 2009.

Further, if the court were to determine that Plaintiff should have known of his injury based on his need to make policy adjustments in 2009, the court could only do so by inferring that the 2009 policy changes were prompted by Plaintiff's awareness of his financial losses. Humer argues that this inference would be reasonable and, therefore, permissible within the court's consideration of his 12(b)(6) Motion. (ECF No. 23 at 2 (citing *Iqbal*, 556 U.S. at 678).) The court, however, does not agree with Humer on this point. There are many reasons why Plaintiff may have made his 2009 policy changes, and there is nothing "on the face of the complaint" that would indicate this decision was prompted by an awareness of his financial losses. *Goodman*, 494 F.3d at 464. By making reasonable inferences in favor of Plaintiff, the court declines to grant Humer's Motion on these grounds.

Similarly, without the benefit of discovery, the court is without sufficient information to determine whether a reasonably diligent policy owner in Plaintiff's position would have discovered his injury prior to 2020. Even if the court were to take judicial notice of the fact that account holders have information related to the performance of their account,[1] the court does not

---

[1] There seems to be a disagreement over the content of Humer's request for judicial notice. Plaintiff argues that the court cannot take judicial notice of "[Plaintiff's] account statements or the 'fact' that [Plaintiff] had access to information regarding his policy." (ECF No. 10 at 3.) However, Humer responds by asserting merely that "it is common knowledge that owners of an investment account have access to information related to the account" and is not requesting that the court take judicial notice of Plaintiff's specific account statements. (ECF No. 23 at 3-4.)

know what information would have been provided to Plaintiff. In consideration of a 12(b)(6) motion, the court must construe items of which it takes judicial notice in favor of the non-moving party. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 607-08 (4th Cir. 2015). Even if the court were to acknowledge that the reasonably diligent policy holder would have had access to information on his account, it does not necessarily follow that the information would have been sufficient to put someone in Plaintiff's position on notice that the advice he received in 2004 was deficient. Not only would this be an inference in favor of Humer, rather than Plaintiff, it is not supported by facts alleged "on the face of the complaint." *Goodman*, 494 F.3d at 464. Because this information is lacking, the affirmative defenses raised by Humer "are more properly reserved for consideration on a motion for summary judgment." *Richmond*, 4 F.3d at 250. As such, the court need not consider Plaintiff's argument that he was unable to meet the elements of his claim prior to receiving the Notice of Default in June 2020. (ECF No. 10 at 5-6.)

## V.     CONCLUSION

For the reasons set forth above, the court **DENIES** Defendant Andrew R. Humer's Motion to Dismiss for Failure to State a Claim. (ECF No. 9.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 4, 2021
Columbia, South Carolina